(651 P.2d 19)
No. 53,756

STATE OF KANSAS, *Appellee,* v. FRANK TUNSTALL, *Appellant.*

Opinion filed September 2, 1982.

*Ronald E. Wurtz,* of Topeka, for appellant.

*Randy M. Hendershot,* assistant district attorney; *Gene M. Olander,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before SWINEHART, P.J., SPENCER and MEYER, JJ.

MEYER, J.: Appellant was found guilty of felony criminal damage to property (K.S.A. 21-3720); burglary (K.S.A. 21-3715); and felony attempted theft (K.S.A. 21-3301 and 21-3701). Appellant was sentenced to a term of imprisonment of not less than one nor more than five years for Counts 1 and 3, and to not less than three nor more than ten years on Count 2, such terms to be served concurrently with each other.

Appellant first contends the court erred by failing to impose adequate sanctions on the State for its failure to provide appellant access to a witness' statement, as ordered by the court, and to which appellant was entitled pursuant to K.S.A. 22-3213.

At the preliminary hearing, Officer Scurlock testified that immediately after observing a man leap from the roof of the burglarized store, he broadcast a description of the suspect over his police radio. This broadcast was recorded by electronic means as a matter of routine procedure. After such testimony, appellant's counsel moved to be granted access to this recording. This request was granted by the court, and an appropriate order was issued.

Approximately twelve days later, when appellant's counsel attempted to review said recording, he was informed that it had been erased. This periodic erasure and reuse of tapes is also routine procedure of the police department. Appellant moved, at the opening of trial, for dismissal, based on the failure by the State to supply him with Scurlock's prior statement. The court denied this motion, instead ruling that there should be no testi-

mony concerning the details of the broadcast description allowed into evidence. Appellant challenges this action.

The governing statute is K.S.A. 22-3213. It provides, in pertinent part:

"(1) In any criminal prosecution brought by the state of Kansas, no statement or report in the possession of the prosecution which was made by a state witness or prospective state witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination at the preliminary hearing or in the trial of the case.

"(2) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . .

"(4) The term 'statement,' as used in subsections (2) and (3) of this section in relation to any witness called by the prosecution means —

. . . .

(b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement."

Under Kansas law, the prosecutor is charged with the requirement to produce statements not only in his own actual possession, but also those in the possession of law enforcement agencies. A rule otherwise would allow the prosecutor to defeat the purpose of the discovery statute simply by removing such statements or reports from his personal file. *State v. Humphrey,* 217 Kan. 352, 357, 537 P.2d 155 (1975).

It is clear that, once he had testified at the preliminary hearing, the recording of Officer Scurlock's prior statement was a proper item for discovery. Thus, appellant's motion to allow access was properly sustained. But this is only part of the issue; the crux here is whether a more drastic sanction was necessary to protect the rights of the appellant.

It has been pointed out by the courts that the right of confrontation of witnesses means more than being allowed to confront the witness physically; it also includes the right to effectively cross-examine the witness, to explore his credibility and aid in determining the weight to be given his testimony. See *State v. Wilkins,* 215 Kan. 145, 149, 523 P.2d 728 (1974); and *State v. Montanez,* 215 Kan. 67, 69, 523 P.2d 410 (1974). It is the protec-

tion of this facet of the right of confrontation which is the purpose of the production requirements of K.S.A. 22-3213. *State v. Humphrey,* 217 Kan. at 358.

Appellant argues that when he could not gain access to Officer Scurlock's prior statement, he was denied a fundamental right. The fact that it is now impossible to know whether that recording would have been helpful or damaging to his case is not dispositive, he argues. By the destruction of the recording, appellant was denied a tool with which he could have possibly attacked Officer Scurlock's credibility, maybe showing that the description the officer initially broadcast did not comport with the one he later gave in court or filed as part of his report (both of which occurred after appellant's arrest and after Officer Scurlock had viewed appellant himself). This denial, he insists, mandates that his conviction on all counts be reversed with orders to dismiss all charges.

Appellant does not allege that the prosecutor or the police department acted in bad faith; he alleges only negligence on their part. For his own conduct, he insists that twelve days was not an unreasonably long time to wait before actually attempting to obtain the statement, and that this was not dilatory or negligent conduct on his part.

Appellant cites *United States v. Bryant,* 439 F.2d 642 (D.C. Cir. 1971), for the proposition that the government may not evade the sanctions for nondisclosure of discoverable statements merely by averring that these were destroyed in good faith, in accord with routine and normal practice. *Bryant* is distinguishable from the case at bar.

In *Bryant,* the court was concerned with the destruction of recordings between the defendant himself and government undercover agents. Such recordings were obviously discoverable, and the failure to administer a system of preservation adequate to insure their preservation was insufficiently protective of the defendant's rights. In such a case, no bad faith need be shown, but rather, mere negligence alone would justify imposition of sanctions.

In the case at bar, this court is concerned not with recordings of appellant's statements, but with a recording of all police radio broadcasts made during some period of time, and, in particular, those portions of such broadcasts relating to appellant. The

frequency of such broadcasts, and the diversity of subject which must be present in same, severely weakens any argument that recordings thereof must, of necessity, contain materials which are obviously discoverable to criminal defendants. We do not feel that the logic of *Bryant* is determinative under the facts of the instant case.

Two Kansas cases exist which generally support the trial court's action in this case. In the first, *State v. Phillips,* 227 Kan. 370, 607 P.2d 56 (1980), the prosecution willfully withheld from the defendant prior statements by its chief witness. These statements were at odds with the witness' testimony at trial. The Kansas Supreme Court declared this error, reversed the convictions and remanded the case for a new trial. Thus, even for *willful disregard* of 22-3213, the ultimate sanction of dismissal was not ordered. Again, a willful disregard is not, by admission of the parties, present herein.

In the second case, *State v. Wilkins,* 220 Kan. 735, 556 P.2d 424 (1976), the prosecution had lost or mislaid the statements of two of its witnesses; thus, these were not available for discovery. The trial court struck the testimony of these two witnesses. The Supreme Court affirmed the conviction and approved the trial court's action. The Supreme Court also detailed the factors a trial court should consider in determining what would be the proper sanction for a violation of K.S.A. 22-3213.

"A trial court exercising its discretion in ruling upon a motion to strike the testimony of a witness for failure of the prosecution to produce a statement pursuant to K.S.A. 22-3213(2), should consider why the statement was not produced; if it was lost, the facts and circumstances surrounding the loss; the negligence or fault on the part of the state; the nature, relevance and importance of the statement; the risk of prejudice to the defendant; the essentiality of the testimony to the state; and the other evidence in the case. The administration of the 'Little Jencks Act' is thus entrusted to the sound discretion of the trial judges, who must use the 'balancing approach' described in the cited cases in determining what sanction, if any, to apply." 220 Kan. at 741-42.

("Cited cases" refers to *Krilich v. United States,* 502 F.2d 680 [7th Cir. 1974]; *United States v. Principe,* 499 F.2d 1135 [1st Cir. 1974]; *United States v. Perry,* 471 F.2d 1057 [D.C. Cir. 1972]; *United States v. Bryant,* 448 F.2d 1182 [D.C. Cir. 1971]; *United States v. Augenblick,* 393 U.S. 348, 21 L.Ed.2d 537, 89 S.Ct. 528 [1969]; and *Palermo v. United States,* 360 U.S. 343, 3 L.Ed.2d 1287, 79 S.Ct. 1217 [1959].)

Applying the above factors, we conclude the following: The statement was not available because it had been destroyed; it was destroyed by the police pursuant to standard operating procedures; there appears to be some fault or negligence attributable to both sides—the prosecution should have acted to preserve the statement and the defense should have sought its production sooner; the statement was relevant and important to establish whether, on the night in question, appellant fit the general description broadcast by Officer Scurlock prior to appellant's apprehension; appellant was prejudiced to a certain degree by the loss, for he was thus denied a tool with which to cross-examine Officer Scurlock; the evidence in question (*i.e.,* the contents of Scurlock's broadcast) was not essential to the State's case; other evidence in the case, particularly the identification of the latent print as appellant's, was sufficient to convict him without the evidence in question.

Viewing this in full perspective, we conclude that the sanction imposed by the judge was adequate and proper in these circumstances. It appears that such a sanction struck an appropriate balance between the competing interests in this case. The other evidence against appellant, specifically his fingerprint at the scene, was sufficient to support his conviction. Even if Officer Scurlock's broadcast description and appellant's appearance upon his apprehension had differed somewhat, this would not have exculpated him, but would only have indicated that Officer Scurlock observed the suspect he described for a fleeting moment in partial light. The circumstances of Officer Scurlock's observation were so established, and appellant's presence in the proximate vicinity immediately following the crime, coupled with his condition at that time, would have been enough to make him a suspect, even if he hadn't fit Officer Scurlock's description to a "tee."

Appellant argues that the trial court erred in failing to bar Officer Scurlock's testimony altogether.

The order by the trial court excised only that testimony relating to the details of the broadcast. As the recorded broadcast was the only statement which was lost, this was a proper order in limine. Officer Scurlock's testimony concerning his own first-hand observations on that evening were not the subject of the lost statement, and we believe these were properly admissible. And even if

this was error, it was harmless beyond a reasonable doubt. See *State v. Johnson,* 231 Kan. 151, Syl. ¶ 7, 643 P.2d 146 (1982).

Appellant's first issue is without merit.

Appellant next contends the evidence was insufficient to sustain a finding that the damage done exceeded $100.00.

Appellant's objection is that it was error for the trial court to instruct the jury on the crime of criminal damage to property in excess of $100, a class E felony as defined by K.S.A. 21-3720(2). His premise is that no jury could have possibly concluded, from the evidence presented, that the damage exceeded $100 in value.

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? Following *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979)." *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979).

While the above-cited rule is specifically denominated *"Sufficiency of Evidence—Appellate Review"* in *Voiles,* it is also, in essence, the rule governing the necessity of giving an instruction at trial in a criminal case. That is, the court should instruct the jury on each offense of which the court determines the jury could reasonably convict the defendant on the basis of the evidence. Thus, if the evidence in this case could reasonably support a finding that the damage caused by the break-in exceeded $100 in value, then the giving of the instruction on felony criminal damage to property was not error.

A review of the testimony of Charles L. Johnson, Jr., reveals the following:

*Damage related to the break-in which was repaired:*
  (1) boarding of attic windows: $25-$30

*Damage related to the break-in which was not repaired:*
  (1) hole in ceiling: $40
  (2) hole in wall: $40-$45

*Damage unrelated to the break-in which was repaired:*
  (1) replacement of a door: $50
  (2) repair of two door facings: $15-$17
  (3) replacement of sheet rock in bathroom: $40
  (4) boarding of window behind freezer: $25

There are two attic windows in the store; only one of these was

broken due to the break-in. It is unclear from Mr. Johnson's testimony whether his figure of $25-$30 above is for repair of both such windows, or for repair of each. Thus, the possible range of damage, from the evidence, would be from a low of $92.50 to a high of $145.00. This higher figure would support the conviction for felony criminal damage to property, and so the giving of the instruction on that crime was not error, but was in fact required under the evidence in this case. We find no merit to this point of error. We also note that, as suggested by both counsel at oral argument, due to our decision on the following issue, this point may indeed be moot.

Appellant's final contention is that the trial court erred to appellant's prejudice by failing to instruct properly on the lesser included offense of misdemeanor criminal damage to property (*i.e.,* damage less than $100). We agree. Moreover, the State has confessed error on this point. The preceding discussion shows that the evidence could have supported a finding that the damage was less than $100, as well as one that it exceeded that figure.

"In some cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to." K.S.A. 21-3107(3).

The same codified rule is found in case law.

"Under K.S.A. 21-3107(3), a trial court is required to instruct on any lesser crime when there is evidence introduced under which the defendant might be reasonably convicted of the lesser offense. Such an instruction is required even though such instructions have not been requested or have been objected to." *State v. Marks,* 226 Kan. 704, 713, 602 P.2d 1344 (1979).

Thus, it was error not to give the instruction on the lesser included offense of misdemeanor criminal damage to property.

The question remains as to the proper disposition to be made of appellant's conviction and sentence on the felony criminal damage to property charge.

The State cites the following cases in support of the proposition that appellant's conviction and sentence for felony criminal damage to property should be remanded, with instructions to sentence him under K.S.A. 21-4502(1)(*a*), the penalty section applicable to misdemeanor criminal damage to property. *State v. Smith,* 215 Kan. 865, 528 P.2d 1195 (1974); *State v. Piland,* 217

Kan. 689, 538 P.2d 666 (1975); *State v. Herber,* 1 Kan. App. 2d 732, 573 P.2d 1112 (1977). In each of these cases, the appellate court did remand a conviction back to the district court, with directions to resentence the defendant under the lesser included offense of such convictions. However, the circumstances in these cases differ somewhat from those in the instant appeal.

In *Smith,* the defendant was charged with and convicted of felony criminal damage to property. The trial court failed to instruct the jury on the issues of the value of the property or of the extent of the damage, and the jury made no findings on either issue. The Supreme Court examined the record, determined that it would support a conviction for misdemeanor criminal damage to property, but not felony, and remanded with the aforementioned directions to resentence.

In *Piland,* the defendant had been charged with and convicted of felony theft. Again, as in *Smith,* the trial court failed to instruct the jury on the issue of the value of the stolen property, and the jury made no finding on that issue. The Supreme Court reached a conclusion similar to that in *Smith*—it found the record insufficient to support a conviction of the greater, felony offense. The disposition was to remand for resentencing for the misdemeanor.

In *Herber,* the defendant was charged with driving at 83 m.p.h. in a 55 m.p.h. zone. Under K.S.A. 8-1341, a conviction of driving between 56 m.p.h. and 65 m.p.h. in a 55 m.p.h. zone is not a "moving violation" for the purposes of suspension of license; driving in excess of 65 m.p.h. in such a zone is a "moving violation." The jury returned a verdict that stated only: "We, the jury, find the above-named defendant, Larry G. Herber, guilty of exceeding the maximum speed limit." 1 Kan. App. 2d at 733. Thus, the jury gave no indication of what speed exactly they had found the defendant to have been driving; the jury had not been specifically instructed to make such a finding. The trial court nonetheless found, in its journal entry, that the defendant had been driving at 83 m.p.h.

The Court of Appeals struck that finding, because it was impossible to tell from the verdict what speed the jury found the defendant was going; all that could be said was that they had found him to be exceeding 55 m.p.h. The court stated that in cases such as *Herber,* the trier of fact should make a specific finding of the defendant's speed. The court cited *Smith* and *Piland,* and

analyzing *Herber* to those cases, remanded with directions to modify the record to show that the defendant was convicted of the lesser variety of speeding—in excess of 55 m.p.h. but not exceeding 65 m.p.h.

K.S.A. 21-3720 defines "criminal damage to property." That statute provides:

"(1) Criminal damage to property is by means other than by fire or explosive:

"(*a*) Willfully injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property in which another has an interest without the consent of such other person; or

"(*b*) Injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property with intent to injure or defraud an insurer or lienholder.

"(2) Criminal damage to property is a class E felony if the property is damaged to the extent of one hundred dollars ($100) or more. Criminal damage to property is a class A misdemeanor if the property damaged by such acts is of the value of less than one hundred dollars ($100) or is of the value of one hundred dollars ($100) or more and is damaged to the extent of less than one hundred dollars ($100)."

Instruction No. 3 in the instant case, relative to Count 1, criminal damage to property, read as follows:

"The defendant is charged in Count I of the complaint with the crime of criminal damage to property. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Byron Lewis had an interest in property described as follows: attic window, ceiling, wall window;

2. That the defendant intentionally damaged the property;

3. That the defendant did so without the consent of Byron Lewis;

4. That the property was damaged to the extent of one hundred dollars or more; and

5. That this act occurred on or about the 7th day of June, 1981, in Shawnee County, Kansas."

The instant appeal differs from the three cited cases, in that the instruction required the jury to make a finding that the extent of the damage exceeded $100 in order for the jury to convict appellant of Count 1, criminal damage to property. Thus, the instruction defines only felony criminal damage to property. The jury was not, under this instruction, given the option to convict of the misdemeanor, upon a finding that appellant did the act, but that the damage was less than $100.

The verdict form did contain a space where the jury was to make a finding of the amount of damage, as shown below:

### VERDICT

"We, the jury impaneled and sworn in the above entitled case, do, upon our oaths, find the defendant guilty of criminal damage to property as charged in Count I of the complaint and find the amount of the property which the defendant damaged to be:

One hundred dollars ($100.00) or more     X

Less than one hundred dollars ($100.00)     __

(The presiding juror will check the proper blank)

/s/ John J. Healey
Presiding Juror"

Additionally, the court gave the following instruction, denominated No. 7:

"The jury is instructed that the state has the burden of proof as to the amount of damage the defendant allegedly did to property of Byron Lewis as charged in Count I of the complaint. Likewise, the state has the burden of proving the value of the goods over which the defendant allegedly attempted to obtain possession as charged in Count III of the complaint.

"It is for you to determine the amount on the verdict form furnished."

Thus, something of a dilemma is presented here. It is not impossible, that notwithstanding the form above and instruction No. 7, that the jury may have believed from instruction No. 3, that a verdict of guilty would require them to mark the "One hundred dollars ($100.00) or more" space; or, in other words, that marking the "Less than one hundred dollars ($100)" space was an acquittal of Count I. Given this, it is difficult to say that the verdict form and instruction No. 7 cured the error in failing to give a misdemeanor instruction, or that this error was harmless beyond a reasonable doubt.

Mindful of the rule that an appellant must always make an affirmative showing of actual prejudice before an error mandates a reversal, and being fully aware that the jury did in fact make a finding that the damage exceeded $100.00, we nevertheless conclude that the conviction and sentence as to felony criminal destruction of property must be reversed. The State has requested a remand with instructions to sentence appellant for misdemeanor criminal damage to property. Appellant acknowledges our power to do so, but requests a new trial instead. Because of the factual differences between this case and the aforementioned line of cases cited by the State, and because we are hesitant to extend the rule of law thus cited, we do not believe this to be a

proper case for remand for resentencing under the lesser included misdemeanor. Therefore, we conclude that this case must be reversed and remanded for a new trial on Count I, criminal damage to property.

Appellant has shown, and the State has confessed, error relative to the failure of the trial court to instruct on the lesser included offense of misdemeanor criminal damage to property. This case, insofar as criminal damage to property is concerned, is reversed and remanded to the trial court with instructions to grant appellant a new trial as to such charge.

Appellant has shown no error relative to the burglary or attempted theft counts. His convictions and sentences on those counts are affirmed.

Affirmed in part, reversed in part, and remanded with instructions.